IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| RIVERPORT INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| ADVENT HOME LEARNING CENTER, INC. d/b/a ADVENT HOME YOUTH SERVICES, INC., and BLONDEL SENIOR, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Riverport Insurance Company ("Riverport" or "Plaintiff"), for its Complaint against Defendants Advent Home Learning Center, Inc. d/b/a Advent Home Youth Services, Inc. ("Advent Home") and Blondel Senior ("Senior") (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1. This is an insurance coverage action in which Riverport seeks a declaratory judgment to determine its rights and obligations under several general liability and excess insurance policies issued to Advent Home for twenty-one (21) lawsuits filed against Advent Home and Senior alleging sexual abuse and other non-sexual-abuse based torts allegedly suffered by multiple minor children, their parents and/or guardians.

2. Riverport seeks a) a determination and declaration from this Court as to which of the insurance policies issued by Riverport to Advent Home, if any, apply to provide defense or indemnity coverage for which the twenty-one (21) lawsuits, if any, against Advent Home and Senior, and b) a determination and declaration from this Court as to the limits of liability under the policies at issue, if any, that apply to the claims asserted in the twenty-one (21) lawsuits.

## THE PARTIES

3. Plaintiff Riverport Insurance Company is an Iowa corporation with its principal place of business in Urbandale, Iowa.

4. Riverport provided insurance coverage to Advent Home from the period of July 2007 to July 2013 under six (6) commercial package insurance policies, Policy Nos. NIA1814275, NIA1815585, NIA1816086, NIA1816241, NIA1817160, and NIA1817232 (the "Primary Policies"), and provided excess insurance coverage to Advent Home from July 2007 to July 2013 under six (6) commercial business package policies, Policy Nos. NEL1804903, NEL1805469, NEL1805749, NEL1806278, NEL1806347, and NEL1806953 (the "Excess Policies") (collectively, the "Policies").

5. Upon information and belief, Defendant Advent Home is a Tennessee corporation with its principal place of business located at 900 County Road 950, Calhoun, Tennessee 37309.

6. Upon information and belief, Defendant Senior was, at all relevant times, the Director of Advent Home located in Calhoun, Tennessee, and is a resident of Calhoun, Tennessee.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over the parties by virtue of Defendants' (a) purchase of the Policies from Riverport in Tennessee; and (b) entering into contracts of insurance covering an entity and persons located within Tennessee.

9. Venue is proper in this Court under 28 U.S.C. § 1391 because, upon information and belief, Advent Home and Senior reside in Calhoun, Tennessee, and because a substantial part of the events or omissions giving rise to this declaratory judgment action occurred in Calhoun, Tennessee, within the judicial district of this District Court.

## FACTUAL BACKGROUND

**A.     The Insurance Policies**

10. From July 2007 to July 2013, Riverport issued to Advent Home at its location in Calhoun, Tennessee, six (6) commercial package insurance policies (the "Primary Policies"), and six (6) excess commercial business package policies (the "Excess Policies") (collectively, the "Policies").

11. The Primary Policies consist of the following:

   a. Primary Policy No. NIA1814275, issued on September 17, 2007 for a policy period from July 15, 2007 to July 15, 2008 (the "2007–08 Primary Policy"). Attached to this Complaint as **Exhibit A** is a true and correct copy of the 2007–08 Primary Policy.

   b. Primary Policy No. NIA1815585, issued on August 12, 2008 for a policy period from July 15, 2008 to July 15, 2009 (the "2008–09 Primary Policy"). Attached to this Complaint as **Exhibit B** is a true and correct copy of the 2008–09 Primary Policy.

   c. Primary Policy No. NIA1816086, issued on July 17, 2009 for a policy period from July 15, 2009 to July 15, 2010 (the "2009–10 Primary Policy"). Attached to this Complaint as **Exhibit C** is a true and correct copy of the 2009–10 Primary Policy.

d. Primary Policy No. NIA1816241, issued on August 6, 2010 for a policy period from July 15, 2010 to July 15, 2011 (the "2010–11 Primary Policy"). Attached to this Complaint as **Exhibit D** is a true and correct copy of the 2010–11 Primary Policy.

e. Primary Policy No. NIA1817160, issued on August 10, 2011 for a policy period from July 15, 2011 to July 15, 2012 (the "2011–12 Primary Policy"). Attached to this Complaint as **Exhibit E** is a true and correct copy of the 2011–12 Primary Policy.

f. Primary Policy No. NIA1817232, issued on August 10, 2012 for a policy period from July 15, 2012 to July 15, 2013 (the "2012–13 Primary Policy"). Attached to this Complaint as **Exhibit F** is a true and correct copy of the 2012–13 Primary Policy.

12. The Excess Policies consist of the following:

    a. Excess Policy No. NEL1804903, issued on September 17, 2007 for a policy period from July 15, 2007 to July 15, 2008 (the "2007–08 Excess Policy"). Attached to this Complaint as **Exhibit G** is a true and correct copy of the 2007–08 Excess Policy.

    b. Excess Policy No. NEL1805469, issued on August 12, 2008 for a policy period from July 15, 2008 to July 15, 2009 (the "2008–09 Excess Policy"). Attached to this Complaint as **Exhibit H** is a true and correct copy of the 2008–09 Excess Policy.

    c. Excess Policy No. NEL1805749, issued on July 17, 2009 for a policy period from July 15, 2009 to July 15, 2010 (the "2009–10 Excess Policy").

Attached to this Complaint as **Exhibit I** is a true and correct copy of the 2009–10 Excess Policy.

    d.    Excess Policy No. NEL1806278, issued on August 6, 2010 for a policy period from July 15, 2010 to July 15, 2011 (the "2010–11 Excess Policy"). Attached to this Complaint as **Exhibit J** is a true and correct copy of the 2010–11 Excess Policy.

    e.    Excess Policy No. NEL1806347, issued on August 10, 2011 for a policy period from July 15, 2011 to July 15, 2012 (the "2011–12 Excess Policy"). Attached to this Complaint as **Exhibit K** is a true and correct copy of the 2011–12 Excess Policy.

    f.    Excess Policy No. NEL1806953, issued on August 10, 2012 for a policy period from July 15, 2012 to July 15, 2013 (the "2012–13 Excess Policy"). Attached to this Complaint as **Exhibit L** is a true and correct copy of the 2012–13 Excess Policy.

13.    Each Primary Policy includes a "general aggregate limit" of liability of $3,000,000 and an "each occurrence limit" of $1,000,000.

14.    Each Excess Policy includes an "each incident" limit of insurance of $1,000,000 and an "aggregate" limit of insurance of $1,000,000.

15.    The Primary Policies provide, in relevant part:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

\*\*\*

    b.    This insurance applies to "bodily injury" and "property damage" only if:
- (1) The "bodily injury" or "property damage" is caused by an "occurrence" that take places in the "coverage territory"
- (2) The "bodily injury" or "property damage" occurs during the policy period; and
- (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
- (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
- (2) Receives a written or verbal demand or claim for property damages because the "bodily injury" or "property damage"; or
- (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\*\*\*

**SECTION III – LIMITS OF INSURANCE**

1.  The Limits of Insurance shown in in the Declarations and the rules below fix the most we will pay regardless of the number of:
    a. Insureds;
    b. Claims made or "suits" brought; or
    c. Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:
    a. Medical expenses under Coverage C;
    b. Damages under Coverage A, except for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
    c. Damages under Coverage B.

\*\*\*

5.  Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
    a. Damages under Coverage A; and
    b. Medical expenses under Coverage C
    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

\*\*\*

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

\*\*\*

**SECTION V – DEFINITIONS**

\*\*\*

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

## SEXUAL ABUSE ENDORSEMENT

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. **SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and **PROPERTY DAMAGE LIABILITY**, and **COVERAGE C – MEDICAL PAYMENTS**, are modified as follows:

1. The term "bodily injury" WILL INCLUDE AND APPLY TO and "occurrence" involving, arising out of, resulting from, or in any way related to SEXUAL ABUSE.

    a. SEXUAL ABUSE means:

    (1) The infliction or attempted infliction of bodily injury or harm upon a "person" by any "perpetrator" (whether such injury or harm is physical, emotional or psychological in nature), whether or not intentional, where said infliction or attempted infliction is primarily sexually motivated, OR

    (2) The abuse, molestation, maltreatment, or mistreatment of a "person" by any "perpetrator" where the same is primarily sexually motivated.

    b. The term "perpetrator" means any employee, agent, officer, director, trustee, representative, or volunteer worker of any Insured at the time of the "occurrence" involving SEXUAL ABUSE.

    c. The term "person" means a natural person who is **not** an employee, agent, officer, director, trustee, representative, or volunteer worker of any Insured at the time of the "occurrence" involving SEXUAL ABUSE.

2. The coverage provided by the preceding Section 1. will not be affected by the fact that the "perpetrator" committing the SEXUAL ABUSE may be an Additional Insured under the terms and provisions of the Coverage Form, BUT the preceding Section **1**. and the said Coverage Form do **not** provide coverage for claims or suits seeking damages, including the defense of same, for any "perpetrator" who participates in any act of SEXUAL ABUSE.

**B. LIMITS OF INSURANCE**

**1. SECTION III – LIMITS OF INSURANCE** of the above-captioned Coverage Part is amended by adding the following:

a. The most we will pay for medical expenses and damage for any "occurrence" involving, arising out of, resulting from or in any way related to SEXUAL ABUSE is the amount shown in the Declarations as the "Each Occurrence Limit."

b. The most we will pay for medical expenses and damages for all such "occurrences" during each consecutive annual period and any remaining period of less than 12 months, starting with the beginning of the policy period stated in the Declarations, is the "Aggregate Limit" shown in the Declarations.

c. ALL AMOUNTS PAID FOR SUCH "OCCURRENCES" WILL REDUCE THE AMOUNT OF THE GENERAL AGGREGATE LIMIT STATED IN THE DECLARATIONS.

d. Regardless of the number of acts of SEXUAL ABUSE, or the period of time over which such acts take place, or the number of "persons" upon whom such acts of SEXUAL ABUSE are inflicted, all "bodily injures" [sic] or other injuries arising out of such acts of SEXUAL ABUSE committed by one "perpetrator," or by two or more "perpetrators" acting together or in concert, will be considered ONE "OCCURRENCE" subject to the "Each Occurrence Limit" shown in the Declarations.

e. In the case of more than one act of SEXUAL ABUSE by one "perpetrator," or two or more "perpetrators" acting together or in concert, the date of the "occurrence" shall be

     the date upon which the first act of SEXUAL ABUSE occurs. In the event acts of SEXUAL ABUSE by one "perpetrator," or two or more "perpetrators" acting together or in concert, shall occur over a period of time such that two or more policies shall have been issued by us to you during that time period, the acts shall be considered ONE "OCCURRENCE" and that ONE "OCCURRENCE" shall be deemed to have taken place only during the time period of the policy that is in effect when the SEXUAL ABUSE first commences; and our total maximum liability will not exceed a single "Each Occurrence Limit" as shown in the Declarations of the policy that was in effect when the SEXUAL ABUSE first commences, no matter how many policies have been issued by us to you during the time period when the acts of SEXUAL ABUSE where committed.

   f. The provisions of Section **e.**, immediately above, are intended to prohibit the stacking of multiple policies or coverage have been issued by us to you.

 **C.** **TERMS AND CONDITIONS**

1. This Endorsement will not be construed to create a separate coverage for occurrences involving SEXUAL ABUSE.

\* \* \*

16. The 2008–09 Excess Policy, the 2009–10 Excess Policy, the 2010–11 Excess Policy, the 2011–12 Excess Policy, and the 2012–13 Excess Policy provide, in relevant part:

     **COMMERCIAL EXCESS LIABILITY POLICY**

\*\*\*

Part II — Limits of Insurance

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay under the terms of this insurance regardless of the number of:

 a. Insured;

 b. Claims made or suits brought; or

c. Persons or organizations making claims or bringing suits.

2. The Amount of Insurance stated as the Aggregate Limit (under Item 5 of the Declarations page) is the most we will pay for the sum of damages and "defense expense" for all claims, occurrences, and "incidents." Each payment we make for such damages or "defense expense" reduces by the amount of the payment the Annual Aggregate Limit. This reduced Limit will then be the Amount of Insurance available for further expenses and damages of these kinds.

3. Subject to Paragraph 2. of this Part II., the Each Incident Limit (under Item 5 of the Declarations page) is the most we will pay for the sum of damages and "defense expense" because of all injury and damage arising out of any one "incident."

4. The Limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

\* \* \*

Part V — Definitions

\* \* \*

4. "Incident" means:

   a. With respect to bodily injury to persons other than your employees and property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

   b. With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease that causes the "bodily injury"; and

   c. With respect to offenses committed by the insured resulting in personal injury or advertising injury, all such injury sustained by any one person or organization.

\* \* \*

11
Case 1:19-cv-00183-PLR-CHS   Document 1   Filed 06/24/19   Page 11 of 18   PageID #: 11

**B.     The Underlying Litigations**

17.     Twenty-one (21) lawsuits have been filed against Advent Home, Senior, and other defendants in the Circuit Court of Kanawha County, West Virginia from approximately October 13, 2017 to approximately February 14, 2019 (the "Underlying Litigations").

18.     The Underlying Litigations consist of the following lawsuits:

a.     *N.H. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1413 (the "N.H. Action");

b.     *T.B. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1414 (the "T.B. Action");

c.     *J.J. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1415 (the "J.J. Action");

d.     *L.B. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-146 (the "L.B. Action");

e.     *D.S. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1423 (the "D.S. Action");

f.     *C.B. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1424 (the "C.B. Action");

g. *C.C. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1427 (the "C.C. Action");

h. *E.D. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1428 (the "E.D. Action");

i. *T.Y. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1429 (the "T.Y. Action");

j. *R.D. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 17-C-1430 (the "R.D. Action");

k. *F.F. and L.F., as parents and guardians of Z.F. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-754 (the "Z.F. Action");

l. *C.J. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-755 (the "C.J. Action");

m. *K.W. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-757 (the "K.W. Action");

n.  *T.N. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-759 (the "T.N. Action");

o.  *F.F. and L.F. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-995 (the "F.F. and L.F. Action");

p.  *L.D. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-996 (the "L.D. Action");

q.  *R.B. and B.B. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 18-C-997 (the "R.B. and B.B. Action");

r.  *T.T. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.*, Case No. 19-C-K13 (the "T.T. Action");

s.  *J.S. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.,* Case No. 18-C-1222 (the "J.S. Action");

t.  *H.M. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.,* Case No. 19-C-K14 (the "H.M. Action"); and

u.  *A.M. v. Advent Home Learning Center, Inc., d/b/a Advent Home Youth Services, Inc., and Blondel Senior, et al.,* Case No. 19-C-K15 (the "A.M. Action").

19. Plaintiffs in the Underlying Litigations allege "multiple occurrences of bodily injury, invasion of privacy, false imprisonment, education malpractice, and other wrongful acts suffered by multiple children" and that the named defendants "through their ownership of Advent Home … fostered a dangerous and neglectful environment" by imposing policies that allegedly resulted in "significant and tragic injuries to numerous children".

20. The named defendants in the Underlying Litigations include Advent Home and Senior. Plaintiffs in the Underlying Litigations allege, *inter alia,* that they suffered physical, sexual, and/or emotional abuse and neglect at Advent Home, and that Advent Home and Senior "employed aggressive and abusive policies that failed to consider the health and safety of the children residing there," including alleged performance of manual labor, denial of necessary medical care, and "educational neglect."

21. Riverport reviewed the Complaints in the Underlying Litigations and has issued four separate coverage letters to Advent Home and Senior on April 5, 2017; January 24, 2018; September 13, 2018; and December 10, 2018, setting forth Riverport's reservations of rights (the "Reservation of Rights Letters").

22. In these Reservation of Rights Letters, Riverport acknowledged the request from Advent Home and Senior for a defense and indemnity for the claims asserted in the Underlying Litigations; offered and provided Advent Home and Senior a defense against the claims asserted in the Underlying Litigations; and fully reserved Riverport's rights, including the right to file a

15
Case 1:19-cv-00183-PLR-CHS   Document 1   Filed 06/24/19   Page 15 of 18   PageID #: 15

declaratory judgment action to obtain a judicial determination that there is no coverage available under the Policies.

23. In these Reservation of Rights Letters, Riverport informed Advent Home and Senior that the Policies do not provide coverage to Advent Home or Senior because, *inter alia*, allegations and claims in the Underlying Litigations fall outside of the Sexual Abuse Endorsement in the Primary Policies; fall outside the corporal punishment exception to the intentional acts exclusion in the Primary Polices; fall within the Designated Professional Services Exclusion in the Primary Policies; fall within the Professional Liability Policy exclusion for dishonest, fraudulent, criminal, and/or malicious acts or omissions in the Primary Policies; fall within the Professional Liability Policy exclusion for intentional acts or omissions in the Primary Policies; and fall within the exclusion for professional services in the Excess Policies. In these Reservation of Rights Letters, Riverport also specifically addressed limits of liability per "occurrence" and in the aggregate for both the Primary Policies and Excess Policies.

24. Riverport is currently defending Advent Home and Senior in the Underlying Litigations, pursuant to its reservations of rights.

## COUNT I
## DECLARATORY JUDGMENT

25. Riverport incorporates paragraphs 1 through 24 above by reference, as if fully set forth herein.

26. The Policies are insurance contracts between Riverport and Advent Home, issued to Advent Home in Tennessee.

27. The Policies provide liability coverage to Advent Home and Senior, but they exclude coverage for the claims in the Underlying Litigations.

28. The Policies also contain provisions that limit what constitutes an "occurrence" and the amount of liability insurance limits with respect to the claims in the Underlying Litigations.

29. Riverport is defending Advent Home and Senior in the Underlying Litigations subject to its reservations of rights.

30. An actual and justiciable controversy exists between Riverport and Advent Home and between Riverport and Senior concerning the extent of coverage, the number of "occurrences" and the limits of liability applicable under the Policies.

31. Pursuant to 28 U.S.C. § 2201, Riverport seeks a declaratory judgment from this Court establishing the following:

    a. Which of the Policies, if any, apply to provide defense or indemnity coverage for which lawsuits and which claims in the Underlying Litigations, if any, against Advent Home and Senior; and

    b. A determination of the number of "occurrences" and the limits of liability under the Policies, if any.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Riverport Insurance Company respectfully prays that the Court:

(1) Enter a declaratory judgment in favor of Riverport and against Advent and Senior, declaring:

    a. Riverport does not owe coverage to Advent Home or Senior for claims asserted in the Underlying Litigations; and

  b.  The rights and obligations of Riverport with respect to the claims asserted in the Underlying Litigations.

(2)  Award Riverport such other, further, and additional relief as this Court deems just and appropriate.

Dated: June 24, 2019

                Respectfully submitted,

                FROST BROWN TODD LLC

                *s/ Scott R. Brown*
                Scott R. Brown (BPR No. 033155)
                Katharine B. Fischman (BPR No. 036009)
                The Pinnacle at Symphony Place
                150 Third Avenue South, Suite 1900
                Nashville, Tennessee 37201
                Phone: (615) 251-5550
                Fax: (615) 251-5551
                srbrown@fbtlaw.com
                kfischman@fbtlaw.com
                *Attorneys for Plaintiff Riverport Insurance Company*

0119409.0715416 4847-0597-2618